*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| *ex rel.* **SHEILA EL-AMIN,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs/Relators** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 95-2000 (JGP)** |
| | ) | |
| **THE GEORGE WASHINGTON** | ) | |
| **UNIVERSITY,** | ) | |
| | ) | |
| **Defendant** | ) | |

## <u>MEMORANDUM OPINION</u>

### INTRODUCTION

This matter is before the Court on Defendant's **Motion To Dismiss** [650].  Defendant "moves the Court to dismiss the claims brought by relator Sheila El-Amin for lack of subject matter jurisdiction."  Def.'s Mot. at 1.  Defendant claims that "Ms. El-Amin executed a release discharging all causes of actions against GW, thereby extinguishing her *qui tam* claims, her standing to sue, and this Court's subject matter jurisdiction over her claims."  *Id*.  The Court concludes that the release executed by Ms. El-Amin, which became effective two days after the filing of her *qui tam* complaint under seal, is unenforceable because it violates several key public policy underpinnings of the False Claims Act, 31 U.S.C. 3729, *et seq*.  The release was executed without the United States' knowledge or consent, and before the United States was given an opportunity to investigate fully the allegations in the *qui tam* complaint.  The release does not bar Relator El-Amin's *qui tam* claims or deprive this Court of jurisdiction to hear them.  Fed. R. Civ. P. 12(b)(1).

## BACKGROUND

The named relator in this action, Sheila El-Amin, was employed as a nurse anesthetist for George Washington University from 1982 to 1995.  *See* Declaration of Relator Sheila El-Amin ¶ 2.[1] In May of 1995, Ms. El-Amin received a letter from George Washington University informing her that her position at the hospital was being terminated.  *See* El-Amin Deposition at 7; El-Amin Decl. ¶ 2.  A few months later, on October 19, 1995, Ms. El-Amin signed a Separation Agreement and Release ("Release") with the hospital.  As part of the release, Ms. El-Amin received a one-time severance payment of $7,892.00.  *See* El-Amin Decl. ¶ 3; Release ¶ 3.  She agreed to release certain claims against George Washington University.  The release provided, in relevant part:

> Ms. El-Amin . . . releases and discharges forever any and all charges, complaints, demands, claims or causes of action (whether known or unknown) which she has or may have against the University, . . . including but not limited to any and all claims arising from or relating to her employment with the University or the termination thereof, and any claims arising under any federal, state, District of Columbia or other local law, relating to discrimination on account of race, color, religion, sex, national origin, age, marital status, disability or other illegal basis, including but not limited to the Age Discrimination In Employment Act of 1967.  Ms. El-Amin further agrees not to sue or otherwise institute or . . . voluntarily participate in the prosecution of any complaints or charges against any person or entities released herein in any federal, state, District of Columbia or other court, administrative agency or other forum concerning any claims released herein.

Release ¶ 4.  Ms. El-Amin waived the 21-day "consideration period," electing to sign the release without consulting an attorney.[2]  After signing the release – but before it became effective – Ms. El-

---

[1]    Relator El-Amin submitted a declaration with her opposition brief.  With the exception of note 2, *infra*, the declaration does not contain any novel or contentious factual assertions.

[2]    Ms. El-Amin states that it was never her intention to release her "right to blow the whistle" on George Washington University's billing practices when she signed the release.  *See* El-Amin Decl. ¶ 4.  The Court does not consider this statement pertinent to the motion to dismiss because Ms. El-Amin's personal rationale for signing the release is not relevant to the issue of

Amin joined three other relators in filing this action on October 24, 1995.  The release became

effective two days after she filed the complaint.[3]   Release ¶ 6.

## DISCUSSION

### I.

Defendant suggests the Court lacks jurisdiction over the subject matter of Relator Sheila El-

Amin's claims because she executed a release, as part of a severance agreement, that purportedly

discharged all causes of action against her former employer, George Washington University,

including her *qui tam* claims under the False Claims Act, 31 U.S.C. § 3729 *et seq*.  Because she

released all causes of action she had against George Washington University, necessarily surrendering

her authority to prosecute what amounts to a partial assignment of the government's False Claims

Act claims, Defendant argues that Ms. El-Amin has no legally protected interest and, as a

consequence, no standing to sue.  *See United States ex rel. Hall v. Teledyne Wah Chang Albany*, 104

F.3d 230 (9th Cir. 1997).  Defendant seeks dismissal of her claims under Federal Rule of Civil

Procedure 12(b)(1).

In opposition, Relator El-Amin claims that the release, which became effective after the filing

of the *qui tam* complaint, is unenforceable as a matter of public policy.  She asserts that the

government must have knowledge of the allegations in a *qui tam* complaint and be given an

opportunity to investigate those claims, as well as the terms of the release, before a release becomes

enforceable.  She notes that there is no evidence that the government was given an opportunity to

---

whether the release is enforceable.  The Court assumes for the purposes of this motion that the
release encompasses Relator El-Amin's *qui tam* claims.

[3]      The operative dates are October 24, the date the complaint was filed, and October
26, the date the release became effective.

investigate the terms of the release or the underlying complaint before the release became effective.

Relator El-Amin directs the Court to *United States ex rel. Longhi v. Lithium Power Techs., Inc.*,[4] a

recent opinion entered in the District Court for the Southern District of Texas, where, she says, a

similar post-complaint release was held to be unenforceable.  Alternatively, Relator El-Amin claims

the release does not encompass the claims raised in her *qui tam* complaint because these claims

belong to the United States, not her.  She reasons that she could not have unilaterally released claims

that belong to the federal government.[5]

### II.

"Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which governs motions to

dismiss for lack of subject matter jurisdiction, 'the plaintiff bears the burden of persuasion to

establish subject matter jurisdiction by a preponderance of the evidence.'" *Alliance for Democracy*

*v. FEC*, 362 F. Supp. 2d 138, 141-42 (D.D.C. 2005) (quoting *Pitney Bowes, Inc. v. United States*

*Postal Serv.*, 27 F. Supp. 2d 15, 19 (D.D.C. 1998)).  "For purposes of ruling on a motion to dismiss

for want of standing, both the trial and reviewing courts must accept as true all material allegations

of the complaint, and must construe the complaint in favor of the complaining party." *Warth v.*

*Seldin*, 422 U.S. 490, 501, 95 S. Ct. 2197, 2206 (1975) (citing *Jenkins v. McKeithen*, 395 U.S. 411,

421-22, 89 S. Ct. 1843, 1849 (1969)).  "Additionally, in deciding a Rule 12(b)(1) motion, it is well

established in this Circuit that a court is not limited to the allegations in the complaint, but may also

consider material outside of the pleadings in its effort to determine whether the court has jurisdiction

---

[4]        *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 2007 U.S. Dist. LEXIS
21273 (D. Tex. 2007).

[5]        Relator El-Amin also claims that Defendant's motion was filed in violation of
Local Civil Rule 7 because it was filed only nine days before the pretrial conference.  *See* LCvR
7(l).  The Court does not reach this argument.

in the case." *Alliance for Democracy,* 362 F. Supp. 2d at 142 (citing *Equal Employment Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 326 U.S. App. D.C. 67, 70-71, 117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997) (other citations omitted)).

### III.

For the release to bar this action, it must both encompass Relator El-Amin's *qui tam* claims and be enforceable as a matter of public policy. The Court concludes that the release is unenforceable because it violates several key public policy underpinnings of the False Claims Act. The release does not bar Relator El-Amin's claims or deprive this Court of jurisdiction to hear them. Because of this conclusion, the Court does not reach the issue of whether the release encompasses Relator El-Amin's claims. Defendant's Rule 12(b)(1) motion to dismiss is therefore denied.

The False Claims Act contains "express and detailed filing and service requirements with which a relator must comply" to perfect his or her cause of action. John T. Boese, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 4.04[B] (3d ed. Supp. 2007). Subsection (b)(1) of 31 U.S.C. § 3730[6] authorizes private individuals to bring a civil action for an alleged violation of the False Claims Act. The action is brought on behalf (and in the name) of the United States. An action brought by a private individual may only be dismissed if both the Court and "the Attorney General give written consent to the dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1).

---

[6]     31 U.S.C. § 3730(b)(1) provides:

> A person may bring a civil action for a violation of section 3729 [31 USCS § 3729] for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

Subsection (b)(2)[7] requires the complaint to be filed under seal.  It also requires the private individuals bringing the action to furnish a "copy of the complaint" and a "written disclosure of substantially all material evidence and information" in their possession to the government.  Once filed, the complaint remains under seal for 60 days.  It is not served on the defendant during this period.  The government "may elect to intervene and proceed with the action within 60 days" after receiving a copy of the complaint and all material evidence and information from the relator.  31 U.S.C. § 3730(b)(2).  The government may also seek extensions of this 60-day period on a showing of good cause.  31 U.S.C. § 3730(b)(3) ("The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal . . .").

Congress provided "numerous reasons for mandating that the complaint be filed initially under seal." Boese, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 4.04[B].  The "primary purpose" of the 60-day seal requirement "was to allow the government to ascertain privately 'whether it was already investigating the claims stated in the suit and then to consider whether it wished to intervene.'" *Id.* (quoting *Erickson ex rel. United States v. American Inst. of Biological Sciences*, 716 F. Supp. 908, 912 (D. Va. 1989)).  *See also* S. Rep. No. 99-345, *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5289 (July 28, 1986) ("Keeping the *qui tam* complaint under seal for the initial 60-day time period is intended to allow the Government an adequate opportunity to fully evaluate the private

---

[7]      31 U.S.C. § 3730(b)(2) provides:

A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure. The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action."). It provides the government with "'an opportunity to study and evaluate the information'" in the relator's possession. *Longhi*, 2007 U.S. Dist. LEXIS 21273 at *18 (quoting S. Rep. No. 99-345, *supra*). This 60-day period also has the twin purposes of preventing the defendant, an alleged wrongdoer, "from being tipped off" that he or she is under investigation, as well as protecting the "defendant's reputation from the taint associated with being a defendant in a lawsuit ostensibly brought by the United States." Boese, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 4.04[B].

The government must respond to the complaint at the conclusion of the 60-day sealing period. Section 3730 gives the government, expressly or impliedly, five options: (i) request an extension of the 60-day period, § 3730(b)(3); (ii) intervene in the action, § 3730(b)(4)(A); (iii) decline intervention[8] and allow the relator to conduct the action, § 3730(b)(4)(B); (iv) move to dismiss the action, § 3730(c)(2)(A); or (v) attempt to settle the action before formally intervening. Boese, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 4.05[B]. If the government elects to intervene, sections 3730(b) and (c) of the Act "clearly provide that the government controls the action." *Id*. So while a *qui tam* complaint is filed by a private citizen, the action may, at the government's election, ultimately be conducted by the United States. *See* 31 USCS § 3730(b)(4) ("Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall . . . proceed with the action, in which case the action shall be conducted by the Government[.]"). It is only where the government notifies the court during the 60-day evaluation period that it is declining to intervene, that "the person bringing the action shall have the right to

---

[8]     The government may intervene at a later date upon a showing of good cause. 31 U.S.C. § 3730(c)(3).

conduct the action." 31 U.S.C. § 3730(b)(4)(B).  Section 3730(c) reinforces this notion that it is the government's "right to control the action."  Boese, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 4.05[B].  Subsection 3730(c)(1), for example, provides that "[i]f the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action."  31 U.S.C. § 3730(c)(1).  In short, while the statutory structure of the FCA may envision a seemingly symbiotic relationship between the government and relator,  "there is ultimately only one plaintiff" – the government.  Boese, *supra*, at § 4.05[C].

Turning to the facts of the present case, the release executed by Relator El-Amin became effective two days after she had filed the *qui tam* complaint under seal, which means that it became effective during the government's 60-day statutory evaluation period.  A similar release, which was entered into during this same 60-day window, was found to be unenforceable in *United States ex rel. Longhi v. Lithium Power Techs., Inc.*, 2007 U.S. Dist. LEXIS 21273 (D. Tex. 2007).  In *Longhi*, the relator executed a "general release" with the defendant only 11 days after filing a *qui tam* complaint under seal, and before the United States had initiated its investigation.  *Id*. at *3-4.  The *Longhi* court concluded the release was "invalid under the plain language of the FCA" because "a release entered into during the proscribed 60-day investigatory period unduly interferers with the United States' exclusive and unilateral right during that time to evaluate whether to join the *qui tam* action."  *Id*. at *6.  The court noted that this 60-day period was intended by Congress to "afford[] the United States the opportunity to investigate – for sixty days at a minimum – in peace," and that a release executed during this period "would eviscerate congressional intent."  *Id*. at *20.  To "give effect to the 60-day seal and investigation period in the [FCA]," the court held that "a release signed during § 3730(b)'s 60-day period is presumptively invalid."  *Id*.

The *Longhi* court also noted the release signed by the relator was analogous, in effect, to a voluntary dismissal.  *Id*. at *20-21.  Under section 3730(b)(1), however, a "'relator may not seek voluntary dismissal of any *qui tam* action even extending beyond the 60-day intervention window.'"  *Id*. at *20 (quoting *Searcy v. Philips Electronics of N. Am. Corp.*, 117 F.3d 154, 159 (5th Cir. 1997)).  By structuring their agreement as a release rather than a settlement and voluntary dismissal, the relator and defendant were able avoid the requirements of section 3730(b)(1) and still reach the same general result.  *Id*. at *21 ("[T]he basic effect of a settlement and a release are the same insofar as they relate to the position of the parties to the action.").  It was "[p]recisely because the relator is so critical to the government's ability to investigate an action brought under the FCA, and its decision whether or not to join," that the court concluded that "a relator should not be able to withdraw from participation in the action for at least th[e] preliminary 60-day period, unless requested to do so by the United States."  *Id*. at *21.  The *Longhi* court concluded that to permit the relator to release his claims without governmental approval "clearly violates the public policy objectives [of the False Claims Act], as well as the broad power to reject a settlement granted to the United States in *qui tam* actions."  *Id*.

In addition to concluding the release violated the plain language of the FCA, the *Longhi* court also concluded the release was unenforceable as a matter of public policy.  2007 U.S. Dist. LEXIS 21273 at *8-17.  The court noted that the FCA "'create[s] incentives for potential whistle blowers to assist the government to discover fraud against the taxpayers,'" *id*. at *8 (quoting *United States v. United States ex rel. Thornton*, 207 F.3d 769, 771 (5th Cir. 2000)), and that "it is in the public interest to protect the federal treasury and ensure the integrity and honesty of those that receive payments from the government," *id*.  Enforcing the release would, the court reasoned, simultaneously

"disincentivize" prospective relators from coming forward to report and prosecute violations of the Act and "encourage" wrongdoers "to insulate themselves from the reach of the FCA by simply forcing potential relators to sign general releases." *Id*. at *15. This, in turn, would "not only have a chilling effect on the government's ability to investigate FCA fraud, but also on its ability to rely for support on those [relators] who have special knowledge of the fraud perpetrated on the United States." *Id*. at *15. "Without a relator's participation," the court continued, "the government would often be unable to hold accountable those who violate the FCA and defraud this nation's taxpayers and its government." *Id*. at *13. In reaching this conclusion, the *Longhi* court highlighted that the Act gives each relator a "personal stake in the claim, which varies according to his or her level of participation." *Id*. at *13 (citing *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 958 (9th Cir. 1995) (other citation omitted)). While a release may not prevent a relator from voluntarily participating in the government's investigation, it does nullify the financial incentives created by Congress to encourage participation. *See* 31 U.S.C. § 3730(d). "[E]ffective fraud investigation" would, as a result, "be acutely compromised." 2007 U.S. Dist. LEXIS 21273 at *13.

Finding the *Longhi* decision persuasive, the Court concludes that the release executed by Relator El-Amin, which became effective just two days after the filing of the *qui tam* complaint, is unenforceable on public policy grounds. A "well established" principle of federal common law provides that "a promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *Newton v. Rumery*, 480 U.S. 386, 392, 107 S. Ct. 1187, 1191 (1987) (footnote omitted). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 178(1) (1981) ("A promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable or the interest in its

enforcement is clearly outweighed in the circumstances by a public policy against the enforcement

of such terms."). "When a release or a settlement agreement impacts upon significant federal rights

or interests, federal common law controls the interpretation of that release or agreement." *Coleson*

*v. Inspector General of Dep't of Defense*, 721 F. Supp. 763, 766 (D. Va. 1989) (citing *Zenith Radio*

*Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 343-48, 91 S. Ct. 795, 808-11 (1971) (other

citations omitted)). This "well established" principle has been applied to similar releases in other

jurisdictions. *See*, *e.g.*, *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953 (9th Cir. 1995)

(holding pre-complaint release, entered into without the government's knowledge or consent, to be

unenforceable on public policy grounds).

Applying the principle explained in *Rumery*, *supra*, to the present situation, the Court

concludes that the interest in enforcing the release is clearly outweighed by the public policy harmed

by enforcement of the agreement.  480 U.S. at 392, 107 S. Ct. at 1191.  There are a number of public

policy considerations implicated by the enforcement of this release.  The first public policy

consideration is found in 31 U.S.C. § 3730(b)(1), which provides that a *qui tam* complaint can be

voluntarily dismissed "only if the court and the Attorney General give written consent to the

dismissal and their reasons for consenting." 31 U.S.C. § 3730(b)(1).  As the *Longhi* court explained,

the effect of a release is similar to a negotiated settlement and voluntary dismissal.  To allow a

relator to release his or her claims against the defendant would amount, in substance, to a voluntary

dismissal of the action without the Court's or the Attorney General's written consent.  This is

inconsistent with language of the Act.  The FCA requires both the Court and the Attorney General

to give their consent, in writing, to a voluntary dismissal.[9] 31 U.S.C. § 3730(b)(1).  This gives the

---

[9]     There is disagreement in the circuits regarding whether the government may
object to a settlement after it has declined to intervene. *Compare United States ex rel.*

government veto power over proposed settlements, at least within the 60-day evaluation period.  *See Searcy*, 117 F.3d at 160 ("For more than 130 years, Congress has instructed courts to let the government stand on the sidelines and veto a voluntary settlement.").  Enforcing the release executed by Relator El-Amin would effectively sanction settlements without the government's consent.  It might also encourage relators to settle claims without the government's knowledge to avoid losing a lion's share of the recovery to the federal treasury.

The second public policy consideration is found in 31 U.S.C. § 3730(b)(2), which delineates the filing requirements of a *qui tam* complaint.  As explained above, the False Claims Act mandates that a *qui tam* complaint be filed under seal for 60 days.  The purpose of the 60-day seal requirement is to give the United States an adequate opportunity to determine whether the allegations in the complaint are already the focus of an investigation.  Boese, CIVIL FALSE CLAIMS AND QUI TAM ACTIONS § 4.04[B].  This gives the government a chance to evaluate the merits of the suit and to decide whether it will intervene, *see* S. Rep. No. 99-345, *supra*, and ensures the defendant is not prematurely alerted to the investigation, *see* Boese, *supra*, at § 4.04[B].  The government may also use this window to decide whether the complaint should be dismissed.  A release entered into during this 60-day window "would eviscerate" the purposes for which Congress created the seal requirement.  *Longhi*, *supra*.  It would shorten the time the United States has to investigate the allegations before the defendant is alerted to the investigation.  This has the potential to interrupt an ongoing government investigation.  It also eliminates the government's ability to seek further

---

*Killingsworth v. Northrop Corp.*, 25 F.3d 715, 722 (9th Cir. 1994) (holding that "the consent provision contained in § 3730(b)(1) applies only during the initial sixty-day (or extended) period"), *with Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 1158 (5th Cir. 1997) (holding that government has "an absolute veto power over voluntary settlements in *qui tam* False Claims Act suits").  This split does not alter the Court's reasoning in this situation because the release became effective during the initial 60-day period.

extensions of the 60-day period where more investigation is needed and curtails the time in which the government can evaluate the merits of the suit "in peace."  *Longhi*, *supra*.  It obviates the government's authority to dismiss the action over the relator's objections.   31 U.S.C. § 3730(c)(2)(A).

The third public policy consideration is embodied in 31 U.S.C. § 3730(d), which specifies the financial award a *qui tam* plaintiff may receive if the suit is successful.  As explained in *Longhi*, *supra*, the purpose of this section is to give "the relator a personal stake in the claim, which varies according to his or her level of participation."  2007 U.S. Dist. LEXIS 21273 at *13.  This financial incentive encourages the relator to inform the government of the alleged fraud.  But more than that, it encourages the relator to actively participate in the case.  For example, in those situations where the government elects to intervene, the relator's possible award is set by statute on a sliding scale from 15 to 25 percent of the total award.  31 U.S.C. § 3730(d).  The actual award depends "upon the extent to which the person substantially contributed to the prosecution of the action."  31 U.S.C. § 3730(d).  This sliding scale provides an incentive for active relator participation.  *See* S. Rep. No. 99-345, *as reprinted in* 1986 U.S.C.C.A.N. 5266, 5293 (July 28, 1986) (listing three "factors courts should take into account when determining [relator] recoveries," including "the contribution of the person bringing the action to the result obtained").   "Without a relator's participation, the government would often be unable to hold accountable those who violate the FCA . . ."  2007 U.S. Dist. LEXIS 21273 at *13.  Enforcing a release entered into before the government decides to intervene would frustrate the financial incentives designed to encourage relator participation.  This might hinder the government's ability to investigate the matter and, should it elect to do so, intervene and proceed with the action.

These three somewhat overlapping public policy objectives outweigh the Defendant's undisputed interest in enforcing the release. This is not to say the Defendant's interest in enforcement is negligible or carries little weight.[10]  *See Hemstreet v. Spiegel, Inc.*, 851 F.2d 348, 350 (Fed. Cir. 1988) ("The law strongly favors settlement of litigation, and there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into.") (citing *Bergh v. Department of Transp.*, 794 F.2d 1575, 1577 (Fed. Cir. 1986), *cert. denied*, 479 U.S. 950, 107 S. Ct. 437 (1986)). But this release, which Relator El-Amin executed as part of a severance agreement, without the assistance of counsel, was not designed to address a federal False Claims Act action, although its language is arguably broad enough to encompass such a claim; rather, it was a general release that was executed as part of a $7,892.00 severance agreement. Defendant has not adequately shown why enforcement of this general release is more important than the releases in *Longhi* or *Green*, *supr*a; nor has it shown that its enforcement outweighs the public policy considerations described above.[11] Regardless of whether the terms of the release encompass Relator El-Amin's FCA claims – because the Court does not reach the issue – the Court finds that enforcement of a release entered into during the government's statutorily prescribed 60-day evaluation period, *see* 31 U.S.C. § 3730(b)(2), without the government's knowledge or consent, *see* 31 U.S.C. § 3730(b)(1), is outweighed by more pressing policy considerations and is therefore

---

[10]     *See* RESTATEMENT (SECOND) OF CONTRACTS, § 178(2) ("In weighing the interest in the enforcement of a term, account is taken of (a) the parties' justified expectations, (b) any forfeiture that would result if enforcement were denied, and (c) any special public interest in the enforcement of the particular term.").

[11]     For example, Defendant does not claim that it intended for the release to bar Relator El-Amin's *qui tam* claims, or that there is a special public interest in this situation, which would make enforcement particularly important.

-14-

unenforceable. *E.g. Green*, 59 F.3d at 969 ("[W]e conclude that . . . prefiling releases of *qui tam*

claims, when entered into without the United States' knowledge or consent, cannot be enforced to

bar a subsequent *qui tam* claim.").

Citing the U.S. Court of Appeals for the Ninth Circuit's opinion in *United States ex rel. Hall*

*v. Teledyne Wah Chang Albany*, 104 F.3d 230, 233 (9th Cir. 1997), Defendant argues that "no

countervailing public policy outweighs the interest in enforcing Ms. El-Amin's release." Def.'s Mot.

at 5. The decision is *Hall* is distinguishable from the present case. In *Hall*, the Ninth Circuit

affirmed a district court's decision to dismiss a *qui tam* action because the relator "had already sued

[the defendant] in state court and had settled, executing a release that also encompassed any future

*qui tam* claim." 104 F.3d at 231. The court concluded that there were no public policy "concerns

. . . that would justify overriding the general policy in favor of encouraging parties to settle disputes."

*Id*. at 233. Central to the court's conclusion was its observation that "the government had full

knowledge of the plaintiff's charges and had investigated them before [the parties] settled." *Id*. at

231. The Court expressly distinguished – without overruling – its earlier decision in *Green*, *supra*,

because "the federal government was aware of [plaintiff's] allegations" and "had already investigated

the allegations prior to settlement." *Id*. at 233. The Court noted that "the public interest in having

information brought forward that the government could not otherwise obtain [was] not implicated"

where the government was given a chance to investigate. This is not the case here. Relator El-Amin

filed the *qui tam* complaint on October 24, 1995. The release became effective two days later. There

is no evidence the government was aware of her allegations before she signed the release on October

19, 1995; nor is there any suggestion the government had an opportunity to investigate fully the

allegations before the release became effective.  This makes *Hall* inapposite.[12]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied.  The release execute by

Relator El-Amin is unenforceable because the interest in its enforcement is outweighed in these

circumstances by the public policy considerations harmed if the agreement is enforced. A release that

becomes effective two days after the filing of a *qui tam* complaint, without the United States'

knowledge or consent, and without giving the United States an adequate opportunity to investigate

fully the allegations in the complaint, will not be enforced to bar Relator El-Amin's *qui tam* claims.

An accompanying order will follow.

**DATE: May 2, 2007**                                          **JOHN GARRETT PENN**
                                                              **United States District Judge**

---

[12]     Although the Ninth Circuit did not overrule its decision in *Green*, 59 F.3d at 953, its decision in *Hall*, 104 F.3d at 230, shows that not all pre-complaint releases are unenforceable. *See United States ex rel. Bahrani v. Conagra, Inc.*, 183 F. Supp. 2d 1272, 1276 (D. Colo. 2002), *overruled on other grounds*, 465 F.3d 1189 (10th Cir. 2006) ("In *Hall*, the Ninth Circuit carved out an exception to the general rule announced in *Green*.").  The exception seems to be applicable where the government has both knowledge of the allegations contained in the complaint and an opportunity to fully investigate those allegations.