*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| *ex rel.* **SHEILA EL-AMIN,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs/Relators,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 95-2000 (CKK)** |
| | ) | |
| **THE GEORGE WASHINGTON** | ) | |
| **UNIVERSITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION**
(November 20, 2007)

This matter is before the Court on Defendant's Motion For Partial Summary Judgment [639] and Relators' Opposition and Cross-Motion For Summary Judgment [648].[1] Defendant moves for partial summary judgment, with respect to the first and second claims in Relators' Third Amended Complaint, "dismissing all allegations that GW presented 'false claims' to the government, and used 'false records' to get 'false claims' paid by the government, other than with respect to any Medicare claims . . . for which [R]elators possess Medicare claim forms." Def.'s Mot. Part. S.J. at 1. Conceding that they are not in possession of a Medicare claim form for every claim that is in issue, Relators nonetheless assert that they "have compiled tens of thousands of pages of direct evidence that the Defendant billed Medicare, " Rels. Opp'n at 2, and that this documentary evidence – twenty two boxes in total, which Relators filed with the Court – is an adequate substitute for the actual Medicare claim forms, *id*. at 16-18. Relators therefore seek a "ruling that Medicare was the payor

---

[1]     Also before the Court, because it presents the same issue, *i.e.*, does the best evidence rule bar secondary evidence of Medicare claims, is Defendant's Motion In Limine Number 5 [658].

for all of the anesthesia procedures in issue." *Id*. at 1.  For the reasons stated below, the motions for

summary judgment shall be denied.

## I:  PROCEDURAL HISTORY

The parties have been engaged in a protracted period of discovery that has lasted a decade;

a snippet of this history is relevant here.  On August 2, 2006, Defendant filed a motion to compel,

in which it sought an order compelling:

> [R]elators to produce any and all Medicare claim records, including without
> limitation all "Form 1500s," in relators' possession, custody or control, relating to
> any requests for reimbursement for providing anesthesia services to Medicare
> patients by the 15 GW physicians identified in the Third Amended Complaint during
> the period October 1989 through October 1995.

GW's Mot. to Compel at 1.  After noting Relators had conceded the documents were in fact

discoverable, the Court ordered Relators to "produce to GW copies of all Medicare claim records

in their possession, including but not limited to all Form 1500s."  *United States ex rel. El-Amin v.*

*George Washington Univ.*, No. 95-2000 (D.D.C. Nov. 22, 2006) (order granting motion to

compel).

In accordance with the Court's order, Relators produced all of the HCFA 1500 claim forms in

their possession on December 8, 2006.   The entirety of this production, according to the

Defendant, amounted to "223 claim forms for anesthesia services during the relevant time period,

50 of which identify one of the 15 GW anesthesiologists [listed in the Third Amended Complaint]

as the physician providing the indicated services."  Def.'s Mot. Part. S.J. at 2.  Both sides recognize

that George Washington University submitted more than 223 Medicare claims for anesthesia services

during this six year period.  Defendant filed the instant motion for summary judgment on January

12, 2007, seeking to limit the scope of Relators' case to the fifty HCFA 1500 claim forms in their

possession.

## II:  DISCUSSION

Defendant claims that "summary judgment should be granted on all claims other than those for which [R]elators possess [Medicare] claim forms." Def.'s Mot. Part. S.J. at 18.   Because "Medicare claim forms are critical to [R]elators' claims," *id*. at 3, and are needed to show that it actually presented a false claim to the government, *id*. at 12, Defendant concludes that Relators "cannot meet their burden of proof [at trial]" without them, *id*. at 20-21.   Medicare claim forms "are fundamental to any case brought under the False Claims Act," Defendant reasons, because they "identify and describe the claims actually submitted to the government, and are the only way to determine conclusively the services for which a defendant sought payment, who provided those services, when payment was sought, whether any certifications were included with that request, and how much [George Washington University] asked to be paid." *Id*. at 11-12.  Indeed, Medicare claim forms are "so paramount," Defendant cautions, "that courts [in other jurisdictions] have refused to permit plaintiffs to proceed past the pleading stage without them."  *Id*. at 13.  Without these forms, there is "'no proof of an actual claim, [and, as a result,] there is no issue of material fact to be decided by the jury.'"  *Id*. at 19 (citing *United States ex rel. Quinn v. Omnicare Inc.*, 382 F.3d 432, 439-40 (3d Cir. 2004)).  Finally, in preemptive fashion, Defendant rejects "any evidence [R]elators might try to offer in order to prove the existence, contents, presentment and falsity of individual claims – other than the Form 1500s themselves," because such evidence would be "barred at trial under the best evidence rule."  *Id*. at 26 (citing Fed. R. Evid. 1002).  Relators must, Defendant argues, "offer in evidence the original (or, potentially, a copy) of the form or forms alleged to be false."  *Id*. at 27.

-3-

In their opposition and cross-motion for summary judgment, Relators reject the argument that HCFA 1500 claim forms are the sole method by which they can establish a violation of the FCA. Relators claim that "[t]here is an abundance of detailed evidence that Defendant billed Medicare," including "tens of thousands of pages of direct evidence that the Defendant billed Medicare for every one of the anesthesia procedures in issue."[2] Rels. Opp'n. at 1-2. Relators maintain that Defendant has "deliberately confuse[d] the element to be proved, *i.e.*, the billing of Medicare, with the evidence relevant to proving that element." *Id*. at 20. They assert that nothing should prevent them from presenting a variety of evidence, including circumstantial evidence, demonstrating that Defendant submitted claims to Medicare. While Relators admit that HCFA 1500 claim forms are certainly "evidence that [Defendant] billed Medicare," they also point out that "under [Federal Rule of Evidence] 402, 'all relevant evidence is admissible,'" which would include the "tens of thousands of pages of" billing documents in their possession. *Id*. at 19. The best evidence rule is not applicable here, they assert, because "the fact to be proved [at trial] . . . is the <u>submission</u> of the claim to the Government," not the contents of the claim. *Id*. at 21. Finally, Relators note that "for much of the period in issue, the Defendant did not bill Medicare using HCFA 1500 claim forms, but rather billed [Medicare] electronically." *Id*. at 19.

## I.     Legal Standards

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall

---

[2]     Relators go into great detail to describe the categories of documents they have collected. These categories include: (i) Medicare Records with Medicare Payor Stamp, Rels. Opp'n at 4-5; (ii) Explanation of Medicare Benefits ("EOMB") Reports, *id*. at 5-6; (iii) Financial Audit Reports, *id*. at 6-7; (iv) "Non-Purged Accounts" Reports, *id*. at 7-8; (v) Electronic Records, *id*. at 8; (vi) Medicare Accounts Receivable Summaries, *id*. at 8-9; (vii) Monthly Financial Status Reports, *id*. at 9-10; and (viii) RRAUD Medicare Claims (supplies), *id*. at 10. Relators also point out that "there is extensive deposition testimony that corroborates and details the Defendant's billing [practices]." *Id*. at 12.

be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. "Put another way, a party is entitled to summary judgment only if no reasonable jury could return a verdict for the non-moving party." *Bettis v. Odebrecht Contrs. of Cal., Inc.*, 364 U.S. App. D.C. 250, 254-55, 393 F.3d 1321, 1325-26 (D.C. Cir. 2005) (citing *Hall v. Giant Food, Inc.*, 336 U.S. App. D.C. 63, 66, 175 F.3d 1074, 1077 (D.C. Cir. 1999)). "In deciding whether there is a disputed issue of material fact, the Court must draw all justifiable inferences in favor of the non-moving party." *Morley v. United States CIA*, 453 F. Supp. 2d 137, 143 (D.D.C. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986)). "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2514. "If there is insufficient evidence indicating that a jury could return a favorable verdict for the nonmoving party, then summary judgment is proper." *Morley*, 453 F. Supp. 2d at 144 (citing *Nat'l Geographic Soc. v. Int'l Media Assoc., Inc.*, 732 F. Supp. 4, 4 (D.D.C. 1990) (citing *Anderson*, 447 U.S. at 248, 106 S. Ct. at 2510)). When considering a motion for summary judgment, the Court "may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 2110 (2000) (citations omitted). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Id*. at 150-151 (quoting *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513).

## II.     False Claims Act

The parties' cross-motions for summary judgment raise a question of proof. That is, what

evidence (or proof) must Relators adduce at trial to demonstrate that Defendant submitted a false

claim to the government, in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*

Defendant claims that the HCFA 1500 claim form[3] is the sole piece of evidence that can adequately

demonstrate that it submitted a false claim to Medicare.  Nothing less will do; anything other than

an HCFA 1500 claim form is, according to Defendant, both inadequate under the False Claims Act

and the cases interpreting it, and barred by the best evidence rule, *see* Fed. R. Evid. 1002.  Relators,

on the other hand, argue that they have collected a mountain of relevant, detailed evidence that

establishes that the Defendant billed Medicare for far more than the fifty HCFA 1500 claim forms

in their possession.  They assert that there is nothing barring them from presenting this relevant

evidence at trial.

Relators do not take the position that they may establish a violation of the FCA, either under

§ 3729(a)(1) or § 3729(a)(2), without demonstrating that George Washington University presented

a claim to the government.  Nor would they want to.  Our Court of Appeals has interpreted both §

3729(a)(1) and (a)(2) as requiring that a false or fraudulent claim must be presented to an officer or

employee of the United States Government.  *See United States ex rel. Totten v. Bombardier Corp.*,

363 U.S. App. D.C. 180, 190-95, 380 F.3d 488, 498-503 (D.C. Cir. 2004).  *See also Sanders v.*

*Allison Engine Co.*, 2005 U.S. Dist. LEXIS 5612, *7 (D. Ohio 2005) ("At least nine Federal Circuit

---

[3]        According to Defendant, HCFA 1500 claim forms "are government documents on which health care providers submit requests to be paid for physician services provided to patients covered by the Medicare program."  Def.'s Mot. Part. S.J. at 3 (citing Medicare Carriers Manual, Part 2 § 5400.1 (Oct. 1994)).  *See United States v. Krizek*, 338 U.S. App. D.C. 187, 189, 192 F.3d 1024, 1026 (D.C. Cir. 1999) ("HCFA 1500 forms serve as invoices for billing Medicare and Medicaid: they must contain the doctor's name, the patient's name, the dates services were provided, and a five-digit code identifying each service provided to a particular patient, called a 'CPT code.'. . . . While a single HCFA form includes services for only one patient, it may include services rendered to that patient on multiple days.").

Courts have determined that a defendant must, in claims based upon subsections (a)(1) and (a)(2) of the FCA, show that a false or fraudulent claim was submitted to the Government."). What Relators do contest, however, is the notion that they are required to present an actual HCFA 1500 claim form for each alleged violation of the FCA. They take the position that secondary evidence, such as Explanation Of Medicare Benefit (EOMB) forms, is an adequate, and perhaps preferable, substitute. To answer this question, the Court will examine the language of the FCA, and cases interpreting it, and the Federal Rules of Evidence.

* * * *

The False Claims Act does not by its language require Relators to present the actual HCFA 1500 claim form to demonstrate a violation of § 3729(a)(1) or (a)(2). The Act was enacted to protect the government treasury from Civil War era fraudsters. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 781, 120 S. Ct. 1858, 1867 (U.S. 2000) ("As the historical context makes clear, . . . the FCA was enacted in 1863 with the principal goal of 'stopping the massive frauds perpetrated by large [private] contractors during the Civil War.'") (quoting *United States v. Bornstein*, 423 U.S. 303, 309, 96 S. Ct. 523, 528 (1976)). It establishes liability for any person who:

> (1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; [or]
>
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government[.]

31 U.S.C. § 3729(a). "The Act penalizes [either] the presentation of a 'false or fraudulent claim for payment' or the use of 'a false record or statement to get a false or fraudulent claim paid.'" *United*

*States ex rel. Schwedt v. Planning Research Corp.*, 313 U.S. App. D.C. 200, 203, 59 F.3d 196, 199 (D.C. Cir. 1995) (quoting 31 U.S.C. § 3729(a)). To establish a violation of § 3729(a)(1), Relators must show: "(1) the defendant submitted a claim to the government, (2) the claim was false, and (3) the defendant knew the claim was false." *United States ex rel. Harris v. Bernad*, 275 F. Supp. 2d 1, 6 (D.D.C. 2003) (citing *United States v. Southland Mgmt. Corp.*, 288 F.3d 665, 674-75 (5th Cir. 2002), *aff'd en banc*, 326 F.3d 669 (5th Cir. 2003)).   To establish a violation of § 3729(a)(2), Relators must show: "(1) the defendant created a record and used this record to get the government to pay its claim, (2) the record was false, and (3) the defendants knew the record was false." *Id.* (citing *Southland Mgmt. Corp.*, 288 F.3d at 674-75).[4]

Under either § 3729(a)(1) or (a)(2), Relators are required to show that Defendant submitted a "claim" to the government.  The term "claim" is broadly defined by the Act to include "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(c).  "In other words, a claim is any request or demand of money from the Government, made directly or made through an intermediary, including a contractor, grantee, or other recipient of federal funds." Joel M. Androphy, FEDERAL FALSE CLAIMS ACT AND

---

[4]       "The Act imposes two types of liability. 'First, the submitter of a "false claim" or "statement" is liable for a civil penalty, regardless of whether the submission of the claim actually causes the government any damages; even if the claim is rejected, its very submission is a basis for liability.  Second, the submitter of the claim is liable for damages that the government sustains because of the submission of the false claim.'" *Bettis*, 393 F.3d at 1326, 364 U.S. App. D.C. at 255 (quoting *United States ex rel. Schwedt v. Planning Research Corp.*, 313 U.S. App. D.C. at 203, 59 F.3d at 199).

Q<small>UI</small> T<small>AM</small> L<small>ITIGATION</small> § 3.01 (2005) ("For example, a physician will be liable if he submits claims to the Government for surgeries [or procedures] that the physician did not perform.  The Government will consider each false submission to be a separate 'claim' and seek reimbursement for all surgeries that the physcian did not perform.").[5]

While it is evident the FCA requires Relators to prove the existence of "a false or fraudulent claim," 31 U.S.C. § 3729(a), nothing in the language of the FCA requires Relators to possess (and present to the factfinder) the actual claim form, whether it be paper or electronic, submitted to the government.  This is not surprising.  Nor does it end the Court's inquiry.  For as Defendant highlights in its briefing, other courts have considered what evidence is needed for trial. Specifically, Defendant asserts "that courts have refused to permit plaintiffs to proceed past the pleading stage without" possessing the Medicare claim forms.  Def.'s Mot. Part. S.J. at 13.  None of the cases Defendant cites to, however, support this broad claim.  *See, e.g.*, *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301 (11th Cir. 2002) (affirming dismissal of FCA *qui tam* action under Federal Rule of Civil Procedure 9(b) because plaintiff "fail[ed] to allege with any specificity if – or when – any actual improper claims were submitted to the Government"); *United States ex rel. Quinn v. Omnicare Inc.*, 382 F.3d 432 (3d Cir. 2004) (affirming summary judgment

---

[5]       In the healthcare industry, a "healthcare provider may [] be liable for submitting a false claim under the FCA for misrepresenting the credentials of the person who provided the services."  Androphy, F<small>EDERAL</small> F<small>ALSE</small> C<small>LAIMS</small> A<small>CT</small> A<small>ND</small> Q<small>UI</small> T<small>AM</small> L<small>ITIGATION</small> at § 5.02[2]. "These cases typically involve a provider representing to the Government that someone who is eligible for reimbursement provided the service, when it was actually performed by a person who is precluded from reimbursement."  *Id.*  For example, "if a student provides medical treatment to a patient without being directly supervised by a licensed physician, and the hospital that is administering the training program then submits a claim under the name and PIN number [provider identification number] of the licensed physician, it will be held liable under the FCA for misrepresenting that a licensed physician performed the services."  *Id.* at § 5.02[2].

against *qui tam* plaintiff because plaintiff "fail[ed] to present evidence of the actual submission of a single false claim to Medicaid"); *United States ex rel. Aflatooni v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002) (affirming summary judgment against *qui tam* plaintiff "[b]ecause [plaintiff] did not point to a single, specific false claim or a sufficiently detailed description of one"). These actions failed because in each instance the *qui tam* plaintiff neglected to present any evidence that an actual false claim had been submitted to the government.   The plaintiff in *Clausen* did not allege the date or dollar amount of a single allegedly false claim, 290 F.3d at 1312; the plaintiff in *Quinn* did not point to a single allegedly false claim, 382 F.3d at 440; and the plaintiff in *Aflatooni* did not produce evidence of a single allegedly false claim, 314 F.3d at 1003.

This case presents a slightly different question, for this is a question of proof.   Relators have collected thousands of pages of anesthesia medical records and billing documents.   The question is not whether they are able to "come forward with a single claim" that was allegedly false, like the plaintiff in *Quinn*, *supra*.   The mountain of billing documents in their possession allegedly demonstrate that Defendant filed numerous claims to Medicare.   The precise question raised by Defendant is whether they may proceed without having the actual HCFA 1500 claim forms.   Both case law and the rules of evidence answer this affirmatively.

The District Court for the Eastern District of Pennsylvania tackled this question *In United States ex rel. Magid v. Wilderman*, 2004 U.S. Dist. LEXIS 8459 (E.D. Pa. 2004).   The *qui tam* plaintiff in *Magid* brought an action under the FCA alleging that her employer, a provider of anesthesia-related services, was routinely altering medical records to increase the amount of time and/or services for which it was billing Medicare.   *Id*. at *2-3.   Much like Relators, the plaintiff in *Magid* alleged that her employer was "submitting HCFA-1500 claim forms to Medicare that

overstated the actual [services performed]." *Id*. at *3.   To prove that defendants were overstating their Medicare claims, plaintiff compared a patient's medical record, which showed the amount of time a patient spent in the operating room and the anesthesia services provided, with the corresponding EOMB form, which showed the amount of money that Medicare reimbursed the defendants for the claim. *Id*. at *6.   Plaintiff theorized that any difference between the services performed (medical record) and the services billed (EOMB) would demonstrate that the defendants' bills were artificially inflated.   Plaintiff did not, however, possess or review "the HCFA-1500 forms that the [*Magid*] Defendants submitted to Medicare for reimbursement." *Id*. at *19.

Defendants moved for summary judgment, claiming that plaintiff could not demonstrate a violation of the FCA without possessing the HCFA 1500 claim forms that were allegedly false. *Id*. at *19-23.   Defendants argued that the EOMB forms were "not a reliable way to determine whether or not [they] submitted false claims to Medicare" because EOMB forms indicate what Medicare paid Defendants, not what Defendants billed Medicare. *Id*. at *21.   Defendants argued "that there could have been errors in transferring the data from the HCFA-1500 forms into the Medicare computer system," and that, as a consequence, the EOMB forms "would not accurately reflect the claims submitted." *Id*. at *21.   The *Magid* court disagreed.   It found that while the defendants may have raised a question regarding the reliability of the EOMB forms, this type of question was more appropriate for the factfinder.   The court concluded "that a genuine issue of material fact exist[ed] as to whether the data in the HCFA-1500 forms is the same as the data in the corresponding EOMBs." *Id*. at *22.

The *Magid* is decision is helpful because it recognized that Medicare billing documentation, specifically an EOMB form, may serve as circumstantial evidence that a claim was submitted to

Medicare.  The *Magid* court reiterated this principle in a later decision.  *See United States ex rel.*

*Magid v. Wilderman*, 2004 U.S. Dist. LEXIS 17494, *6-7 (E.D. Pa. 2004) (*Magid II*) ("Relator relies

on the EOMBs as circumstantial evidence that Defendants submitted false claims to Medicare via

the HCFA-1500 claim forms.").  The Court agrees with this principle.  Relators have collected a

variety of billing documentation, including EOMB forms, which serves as circumstantial evidence

that Defendant submitted claims to Medicare.  "As the Supreme Court has said, 'direct evidence of

a fact is not required.  Circumstantial evidence is not only sufficient, but may also be more certain,

satisfying and persuasive than direct evidence.'"  *United States v. Williams*, 342 U.S. App. D.C. 256,

260, 216 F.3d 1099, 1103 (D.C. Cir. 2000) (quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S.

325, 330, 81 S. Ct. 6, 11 (1960)).  *See also Aflatooni*, 314 F.3d at 1002 (noting plaintiff must "come

to court with a claim in hand or with sufficiently detailed *circumstantial evidence* that the defendant

actually submitted a false claim") (emphasis added).  This evidence is enough to create a genuine

issue of material fact as to whether Defendant submitted claims to Medicare.[6]  Fed. R. Civ. P. 56.

　　　While this evidence may create a genuine issue as to whether Defendant submitted claims

to Medicare, Relators ask the Court to take it one step further.  Relators move for a summary

judgment ruling that Medicare was the payor for all of the anesthesia procedures in issue.  Rels.'

Opp'n at 1.  This motion must be denied because whether Medicare was or was not the payor for any

---

[6]     Defendant also asks the Court to enter partial summary judgment on the issue of
civil penalties.  It argues that "the court should grant partial summary as to the statutory penalties
that [R]elators may seek regarding Medicare claims for which they cannot adduce Form 1500s."
Def. Mot. Part. S.J. at 25.  Defendant stresses "the need for certainty" before statutory penalties
are imposed.  *Id*. at 24.  Defendant is essentially asking the Court to evaluate the strength of the
Relators' evidence, which is not a proper consideration on a motion for summary judgment.  *See
Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513 ("Credibility determinations, the weighing of the
evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of
a judge[.]").  The number of false claims submitted by Defendant, if any, will be determined by
the factfinder.

anesthesia claims is not a material fact that is at issue in this case.  *See Government of Rwanda v. Rwanda Working Group*, 150 F. Supp. 2d 1, 5 (D.D.C. 2001) ("The substantive law on which a claim rests determines which facts are 'material.'  If a fact bears on an essential element of the legal claim, then it is material; otherwise, it is not.") (citing *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510).  To prove a violation of the FCA, Relators must demonstrate that Defendant (1) submitted a claim to the government, (2) the claim was false, and (3) the defendant knew the claim was false. *See* 31 U.S.C. § 3729(a)(1).  There is no requirement the government actually pay the claim; liability attaches to the knowing submission of a false claim.  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999) ("'The [FCA] attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment.'") (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)).  Whether Medicare was the payor for these claims is not material because it does not tend to prove or disprove an essential element of Relator's claim. *See* 73 AM JUR 2D SUMMARY JUDGMENT § 48 (2006) ("[M]aterial facts are those that tend to prove or disprove an element of a disputed claim for relief, or that are necessary to the proof or defense of a claim, and are determined by reference to substantive law.") (footnote omitted).

Regardless of materiality, summary judgment is also improper because Relators have not adequately defined the universe of claims that are "in issue" for purposes of their motion.  Relators ask for a ruling that Medicare was the payor for all of the anesthesia procedures "in issue," Rels.' Opp'n at 1, and yet they do not identify the specific claims that were purportedly paid by Medicare. In a footnote, Relators define "in issue" to "mean the anesthesia claims submitted directly or indirectly by the Defendant during the six-year period preceding the Complaint."  *Id.* at 1 n.1.  As the Court has explained above, however, the number of anesthesia claims that Defendant submitted

to Medicare during this time period (if any) is in dispute. Without knowing the claims submitted to

Medicare, the Court cannot presume that Medicare paid any claims. It would, to use a colloquialism,

put the cart before the horse. Medicare pays claims that Defendant submits for payment. Until the

existence and number of Medicare claims Defendant submitted for payment is known, a task left to

the factfinder, the number of claims paid by Medicare (if any) is indeterminable. Summary judgment

is improper in the face of this uncertainty.

Finally, the best evidence rule does not bar secondary evidence of Medicare claims.[7] The

best evidence rule provides:

> To prove the content of a writing, recording, or photograph, the original writing,
> recording, or photograph is required, except as otherwise provided in these rules or
> by Act of Congress.

Fed. R. Evid. 1002.  *See* 6 Weinstein's Federal Evidence § 1002.02 (2006) ("Rule 1002 is a

restatement of the best evidence rule that generally requires an original be admitted into evidence

to prove the content of a writing."). This is a rule of preference, not a solid bar on secondary

evidence. *See Murray v. District of Columbia Bd. of Education*, 1983 U.S. Dist. LEXIS 17275, *7

(D.D.C. 1983) ("It is to be remembered that the best evidence rule is one of preference, not of

absolute exclusion[.]") (citing 5 Weinstein's Evidence §1004(1)[02] (1982)).

The best evidence rule is implicated in this situation. Under the FCA, Relators are required

to prove that Defendant submitted a claim to the government, and that this claim was false.  31

U.S.C. § 3729(a); *Harris*, 275 F. Supp. 2d at 6. To show that a Medicare claim was false, Relators

---

[7]      Defendant's Motion *In Limine* Number 5 raises the same issue as its motion for
partial summary judgment. That is, whether the best evidence rule prevents Relators from
presenting secondary evidence showing that Defendant submitted claims to Medicare. Defendant
asks the Court "to exclude secondary evidence of alleged 'false claims' that [R]elators assert GW
presented to the government to obtain payment for anesthesia services." Def.'s Mot. In Limine
No. 5 at 1.

necessarily have to "prove the content" of the claim.  Fed. R. Evid. 1002.  They must do more than simply show Defendant submitted a claim for reimbursement to the Government.  They must show what the claim was for.  In order to demonstrate that a claim was false, Relators will need to show that the claim submitted to Medicare somehow inflated the medical service that was actually provided to the patient.  It would be difficult  to make this comparison without knowing something about the claim.  For at least some portion of the 1989-1995 time period, Defendant submitted Medicare claims on paper HCFA 1500 claim forms.[8]  In these instances, HCFA 1500 claim forms constitute "original writings" under Federal Rule of Evidence 1001(1), and should, under the best evidence rule, be admitted into evidence.  *See Magid*, 2004 U.S. Dist. LEXIS 17494 at *11 ("It is clear that the best evidence rule is implicated by Relator's intention to introduce the EOMBs at trial as circumstantial evidence of the contents of the HCFA-1500 claim forms.").  The best evidence rule, however, "contains a number of built-in exceptions to the requirement that the original be produced." 6 Weinstein's Federal Evidence § 1002.04.  These exception are intended to "prevent over-technical application of the rule in light of its more limited rationale."  *Id*.

The exceptions to the best evidence rule are found in Federal Rule of Evidence 1004, which provides:

> The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if–
>
> (1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or
>
> (2) Original not obtainable. No original can be obtained by any available judicial process or procedure; or
>
> (3) Original in possession of opponent. At a time when an original was under the

---

[8]        This issue is discussed *infra*.

control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing; or

(4) Collateral matters. The writing, recording, or photograph is not closely related to a controlling issue.

Fed R. Evid. 1004. "Because of [the] numerous avenues of escape from the mechanical application of the requirement of the original, a party is rarely precluded from producing significant relevant evidence because of the best evidence rule." 6 Weinstein's Federal Evidence § 1002.04.

Relators are excused from presenting original HCFA-1500 claim forms under Rule 1004(2).[9] Rule 1004(2) provides that an original writing is not required if it cannot be obtained by any available judicial process or procedure. A brief review of Relators' efforts to obtain the HCFA-1500 claim forms demonstrates that the forms are not obtainable.[10] Relators initially sought HCFA-1500 claim forms by serving two document requests on the Defendant. When these requests failed to return any claim forms, because the Defendant did not possess any responsive forms, Relators served eight different subpoenas in an effort to obtain the documents. Relators subpoenaed, among others, the Health Care Financing Administration ("HCFA"), a component of the United States Department of Health and Human Services, which routinely stores HCFA-1500 claim forms for a set period of time. In this subpoena, Relators sought "[a]ll documents referring or relating to George Washington University . . . that refer or relate to billing for anesthesia for Medicare patients . . . from 1985 to the

---

[9]      Defendant mistakenly asserts that "Relators make no response with respect to the second, third and fourth exceptions [of Rule 1004], and instead stake their entire argument on . . . [Rule 1004(1)]." Def.'s Reply In Support of Mot. In Limine No. 5 at 8. This is inaccurate because Relators do rely on Rule 1004(2). *See* Rels.' Opp'n at 22 ("Other evidence of the content of the [Medicare claims] is permitted if . . . they are not obtainable by judicial process or otherwise. Fed R. Evid. 1004(2).").

[10]      The Court accepts Relators' representations as true. *See Magid*, 2004 U.S. Dist. LEXIS 17494, *15 n.7.

present.[11]  The government did nothing.  When the government failed to respond to the subpoena,

counsel for Relators traveled to the Federal Records Center in Dayton, Ohio, where the HCFA 1500

claim forms were supposedly stored.  Counsel for Relators "hired numerous temporary staff" and

spent "many weeks reviewing millions of pages and thousands of boxes of Medicare records."  Rels.

Mot. at 24.  In spite of this lengthy manual search, Relators were only able to locate a few hundred

HCFA 1500 claim forms.

Relators have shown that they made a reasonable effort to locate HCFA 1500 claim forms,

including serving a subpoena on the HCFA, and that despite their diligent efforts these forms are not

obtainable.  *See* Fed. R. Evid. 1004, Advisory Committee Notes ("When the original is in the

possession of a third person, inability to procure it from him by resort to process or other judicial

procedure is sufficient explanation of nonproduction."); *United States v. McGaughey*, 977 F.2d 1067,

1071 (7th Cir. 1992) ("Rule 1004 does not contain an independent requirement that a search be

conducted; rather, the concept of a diligent search is an avenue by which the larger issue of the

document's destruction may be proved.").  In reaching this conclusion, the Court is comforted by

the fact that the secondary evidence Relators will present in lieu of the HCFA 1500 claim forms is

not of suspect reliability.  It consists of billing documentation that was, by and large, created by the

government or the Defendant.  Both are reliable sources.  *Cf. Cartier v. Jackson*, 59 F.3d 1046 (10th

Cir. 1995) (plaintiff sued Michael Jackson for copyright infringement, alleging that she had

circulated a demo tape (since lost) of the song "Dangerous" that pre-dated Michael Jackson's

version).  In this case, by contrast, "[t]he need for relevant evidence trumps the dangers of inaccuracy

and fraud--issues left to the trier in assessing probative force--and allows the court to admit

---

[11]     The subpoena was dated October 26, 1998.

secondary evidence."  6 Weinstein's Federal Evidence § 1004.20.

There is one added wrinkle here that makes application of the best evidence rule potentially inappropriate.  Defendant appears to have submitted claims to Medicare via HCFA 1500 claim forms for the time period 1990-1996.  *See* Sharon Marsonek Dougherty Deposition, August 9, 2000, at 46. This action, however, also includes claims submitted in 1989.  It is not clear to the Court how Defendant submitted claims to Medicare for the year 1989.  It may be that it relied on HCFA 1500 claim forms for this year as well.  It may not.  But without knowing how Defendant submitted a claim to Medicare, the Court cannot properly apply the best evidence rule.  The rule implicitly requires knowing what the "original writing" was.  *See* Fed. R. Evid. 1002.  If Defendant did not submit claims to Medicare on HCFA 1500 claim forms in 1989, then it would be impossible for Relators to produce them at trial.

Even for the time period 1990 to 1996, it appears that Defendant submitted HCFA 1500 claim forms in two different formats.  Some HCFA 1500 claim forms were submitted electronically, and others were submitted in hard copy format.  Defendant asserts that regardless of format, all HCFA 1500 claim forms were materially identical to one another.  Maybe so.  But this raises an additional question that may frustrate application of the best evidence rule.  If Defendant submitted claims to Medicare electronically, then the "claim" for purposes of the Act might, it seems, be the electronic file sent to Medicare or Defendant's Medicare carrier.  A paper printout of this file, created at a later date, would not be the original claim.  This issue becomes more murky because neither Defendant nor Relators seem to know when Defendant submitted claims electronically and when it submitted them in hard copy format.

Adding to this murkiness, Defendant's present stance – that electronic claims are "in all

material respects identical" to paper claims – appears to be an about-face.  On February 6, 2001,

Relators sought an order from the Court allowing them to retrieve "electronic GWU payment claims

data" that was stored by the HCFA.[12]  Relators sought this electronic data after they had completed

a manual search for paper HCFA 1500 claim forms at the Federal Records Center.  Defendant

opposed this motion.[13]  One of the reasons Defendant opposed this motion was its belief that

"electronic materials," by which it meant claims filed electronically, did "not . . . constitute authentic

copies of the bills submitted by GWU on electronic tapes."  Defendant argued that electronic claims

"reflect[ed] data entry and/or processing done by GWU's Medicare carrier in which data submitted

by GWU was commingled with that from other providers."  Defendant's suggestion to the Court

was, in essence, that the actual claims were submitted on "electronic tapes" to its Medicare carrier.

The electronic claims submitted to the government were not "authentic copies" because they were

recreated by Defendant's outside Medicare carrier and were commingled with information from

other hospitals.  Defendant stakes an entirely new position here.  Now it argues that electronic claims

are "identical" to paper claims.  It does not mention the claims submitted on electronic tapes.  The

best evidence rule relies on the presumption that there is a discernable "original writing."  *See United

States v. Howard*, 953 F.2d 610, 613 (11th Cir. 1992) ("The best evidence rule presupposes the

existence at one time of a decipherable original . . .") (citing *United States v. Yamin*, 868 F.2d 130,

134 (5th Cir.1989)).  There may be one here, but Defendant has not shown what it is.

Ultimately, the purpose of the best evidence rule is to prevent fraud and evidentiary

---

[12]     *See* Relators' Motion For Order That Permits The United States To Make
Electronic GWU Payment Claims Data Available To The Parties, February 6, 2001 [469].

[13]     See GWU's Opposition To Relators' Motion For Order Further Extending
Discovery Regarding Payment Claims, February 15, 2001 [477].

inaccuracy.  *See* 6 Weinstein's Federal Evidence § 1002.03 (2006).  Neither concern is implicated here.  Defendant does not challenge the accuracy or reliability of the documentation in Relators' possession, and the Court concludes that it is not suspect.  Instead, Defendant challenges whether Relators could have done more to secure the hard copy HCFA 1500 claim forms.  The Court concludes otherwise.  Relators issued a subpoena to the HCFA and, upon receiving no response from the government, performed a manual search of files at the Federal Records Center.  They searched millions of pages of documents over the course of several weeks, hiring additional staff for assistance.  The Court is given wide discretion to decide evidentiary matters such as this one.  *United States v. Ramsey*, 334 U.S. App. D.C. 193, 197, 165 F.3d 980, 984 (D.C. Cir. 1999) ("[A] district court's decision to admit evidence . . . is entitled to 'much deference' on review.") (quoting *United States v. Lewis*, 224 U.S. App. D.C. 74, 78, 693 F.2d 189, 193 (D.C. Cir. 1982), *cert. denied*, 120 S. Ct. 223 (1999)).  Based on the effort Relators undertook to locate the HCFA 1500 claim forms, and the reliability of the secondary evidence in their possession, the Court concludes that the best evidence rule does not bar secondary evidence of Medicare claims.  These records are not obtainable under Federal Rule of Evidence 1004(2).

## CONCLUSION

Based on the foregoing, Defendant's motion for partial summary judgment [639], Relators' cross-motion for summary judgment [648], and Defendant's motion in limine number 5 [658] shall be denied.  An appropriate Order accompanies this Memorandum Opinion.

Date:   November 20, 2007                     _____/s/_____
                                              COLLEEN KOLLAR-KOTELLY
                                              United States District Judge